UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ANGELO SANCHEZ,

                              Plaintiff,                9:18-CV-1488
                                                                   (BKS/DJS)

     v.

THE STATE OF NEW YORK, et. al.,

                              Defendants.

---

APPEARANCES:

ANGELO SANCHEZ
14-A-5140
Plaintiff, pro se
Sing Sing Correctional Facility[1]
354 Hunter Street
Ossining, NY 10562

BRENDA K. SANNES
United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

The Clerk has sent to the Court for review a Complaint filed by pro se plaintiff Angelo Sanchez ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting claims arising out of his confinement in the custody of the New York State Department of Corrections and

---

[1] Plaintiff's address currently listed on the Docket Report for this action is Great Meadow Correctional Facility. A search of the Inmate Information Database maintained by the New York State Department of Corrections and Community Supervision, using Plaintiff's Department ID Number (14-A-5140), reveals that the inmate is presently incarcerated at Sing Sing Correctional Facility. *See* N.Y.S. DOCS Inmate Population Information Search website at http://nysdocslookup.docs.state.ny.us (last visited March 5, 2019). The Clerk of the Court is directed to amend the docket accordingly. Plaintiff is advised that under this court's rules, an unrepresented litigant is under a duty to inform the court of any address changes in writing. *See* N.D.N.Y.L.R. 10.1(c)(2). For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the court informed of address changes. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." N.D.N.Y. L.R. 41.2(b).

Community Supervision ("DOCCS"). Dkt. No. 1 ("Compl."). Plaintiff, who is presently incarcerated at Sing Sing Correctional Facility ("Sing Sing C.F."), has not paid the filing fee for this action and seeks leave to proceed in forma pauperis. Dkt. No. 5 ("IFP Application").[2] Plaintiff also filed a motion for a temporary restraining order. Dkt. No. 8.

## II.    IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[3] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id*. (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review of Plaintiff's IFP Application, the Court finds that he has demonstrated sufficient economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. *See* Dkt. No. 6. Accordingly, the Court grants Plaintiff's IFP Application.

## III.   SUFFICIENCY OF THE COMPLAINT

---

[2]  On December 28, 2018, this action was administratively closed due to Plaintiff's failure to submit a certified application for in forma pauperis status. Dkt. No. 4. The case was reopened on January 18, 2019, upon receipt from Plaintiff of the required filing. Dkt. No. 7.

[3]  Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

### A. Standard of Review

Having found that Plaintiff meets the financial criteria for commencing this action in forma pauperis, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[4]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the

---

[4] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

3

claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* No. 95 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

### B. Summary of the Complaint[5]

---

[5] The Complaint includes exhibits. *See* Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the Complaint, the Court will consider the Complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents

(continued...)

The following facts are set forth as alleged by Plaintiff in his Complaint.

In 2014, Plaintiff, a member of the "Latin Kings," was transferred to DOCCS' custody after being convicted of murdering a "high ranking member" of "the Bloods." Compl. at 2. During his confinement in DOCCS, Plaintiff has been the victim of multiple assaults and made many enemies. *Id*. To date, thirty inmates are "documented for separation purposes." *Id*.

On January 19, 2015, at approximately 3:15 p.m., in the yard of C-Block at Attica Correctional Facility ("Attica C.F."), Plaintiff was attacked by an unidentified assailant. Compl. at 5. Plaintiff suffered a cut on the left side of his face that required 35 stitches. *Id.* As a result of the attack, Plaintiff requested protective custody. Dkt. No. 1-1 at 5. Plaintiff was interviewed by an Offender Rehabilitation Coordinator. *Id*. The coordinator recommended protective custody, despite the fact that Plaintiff had "no documented enemies in DOCCS." *Id*. On January 28, 2015, the Superintendent of Attica C.F. assigned Plaintiff to protective custody status. *Id*.

On March 30, 2017, Plaintiff requested protective custody claiming that "Inmate Jackson 04B3073" extorted money from him and threatened him with bodily harm. Dkt. No. 1-1 at 6. On the same day, at approximately 2:23 p.m., while Plaintiff was working as a porter at Clinton Correctional Facility ("Clinton C.F."), he was assaulted by an unidentified assailant and suffered a cut on the left side of his neck. Compl. at 5. On April 7, 2017, an Offender Rehabilitation Coordinator interviewed Plaintiff with respect to his request for protective custody. Dkt. No. 1-1 at 6. During the interview, Plaintiff stated that he could not

---

[5](...continued)
incorporated in it by reference).

afford to pay Jackson, so he reported "the incident" to security. *Id.* Plaintiff claimed that Jackson was aware that Plaintiff "snitched" and he feared for his safety. *Id.* On April 10, 2017, Plaintiff's request for protective custody was approved by the Superintendent. *Id.*

On March 20, 2018, at approximately 2:20 p.m., Plaintiff told the officers in the G-Block at Elmira Correctional Facility ("Elmira C.F.") that he was experiencing chest pains. Dkt. No. 1-1 at 1. Plaintiff explained that he was "PC pending" and therefore, expected an escort to medical. *Id*. The officers told Plaintiff that no one was around that it was "okay" to walk to medical alone. *Id*. When Plaintiff returned to his cell, an unidentified inmate cut him on the right side of the face. *Id*. As a result, Plaintiff suffered a four-inch laceration. Compl. at 5.

On March 24, 2018, Plaintiff filed a grievance related to the March 20, 2018 assault.[6] Dkt. No. 1-1 at 1. On March 26, 2018, Plaintiff was placed in protective custody, for his safety. *Id.* at 3. Plaintiff was advised that prior to his "next Protective Custody review," he could write to the Superintendent with a statement regarding the need for continued protective custody status. *Id.* Plaintiff's next review was scheduled for April 2018. *Id.* In April 2018, Plaintiff sent two letters, addressed "to whom it may concern," asking to remain in protective custody. Dkt. No. 1-1 at 2, 7.

On November 10, 2018, at approximately 9:35 p.m., Plaintiff was assaulted by an unknown assailant through his cell gate and suffered a four-inch laceration on the left side of his face.[7] Compl. at 5.

---

[6] The grievance was not written on a grievance form and does not contain a grievance number or any markings indicating where it was sent, when it was sent, or if/when it was received.

[7] Plaintiff has not plead facts related to where the attack occurred.

6

Construed liberally,[8] Plaintiff asserts Eighth Amendment failure to protect claims and negligence claims against the State of New York and Commissioner Anthony Annucci ("Annucci"). Compl. at 2. Plaintiff seeks injunctive relief in the form of an order placing him in permanent protective custody. *Id*. at 3, 6. Plaintiff also moves for "such other and further relief as this Court may deem just and proper."[9] *Id*. For a complete statement of Plaintiff's claims and the facts he relies on in support of those claims, reference is made to the Complaint.

## C. Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

The Court will construe the allegations in the Complaint with the utmost leniency.

---

[8] The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

[9] To the extent that the Complaint includes a request for monetary damages pursuant to Section 1983 against Annucci, in his official capacity, or the State of New York, those claims are barred by the Eleventh Amendment and are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

7

*See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

## IV. ANALYSIS

### A. Claim Against the State of New York

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the type of claims asserted in Plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *see also Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking

injunctive relief against a state official for an ongoing violation of law or the Constitution. Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir.2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv*., 945 F.2d 25, 32 (2d Cir.1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities). Accordingly, Plaintiff's claim for injunctive relief against the State of New York is dismissed as Plaintiff seeks relief from a defendant immune from suit under section 1983. *See LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983).[10]

### B. Claim Against Annucci

To state a viable claim under Section 1983, a plaintiff must allege that the defendant, while acting under color of state law, deprived him of a right, privilege or immunity secured by the Constitution or by the laws of the United States. *See* 42 U.S.C. § 1983. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). However, "district courts in this Circuit have held 'that the personal involvement requirement does not apply to bar actions . . . pursuant to § 1983 for injunctive relief against a state official.' " *Nassau & Suffolk Cty. Taxi Owners Ass'n, Inc. v. State*, 336 F. Supp. 3d 50, 68 (E.D.N.Y. 2018) (quoting *Marinaccio v. Boardman*, No. 1:02 CV 00831, 2005 WL

---

[10] Plaintiff's remaining claims for prospective injunctive relief against Annucci in his official capacity is discussed *infra*.

9

928631, at *9 (N.D.N.Y. Apr. 19, 2005)). Here, Annucci is sued in his official capacity, and Plaintiff seeks only injunctive relief. Therefore, Plaintiff need not establish that Annucci was personally involved in the Eighth Amendment violations. However, "[t]o be entitled to permanent injunctive relief from constitutional violation, [a] plaintiff must first establish the fact of the violation, and then demonstrate the presence of continuing irreparable injury if the injunction does not issue, and the lack of adequate remedy at law[.]" *Newman v. State of Ala.*, 683 F.2d 1312 (11th Cir. 1982). In the case at hand, Plaintiff has not sufficiently plead any constitutional violation.

The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Blyden v. Mancusi,* 186 F.3d 252, 262-63 (2d Cir. 1999); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citing, *inter alia, Estelle*). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

Under the Eighth Amendment, prison officials are required to take reasonable measures to guarantee the safety of inmates and to protect them from known harm. *Farmer*, 511 U.S. at 832-33. In *Farmer*, the Supreme Court set out the two-pronged test that determines when a failure to protect a prison inmate from assault by other inmates rises to the level of a constitutional violation. First, the prisoner must have been "incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. Second, the prison official must have shown "deliberate indifference" to the prisoner's safety. *Id.* Deliberate

indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *Hines v. Lacy*, 189 F.3d 460 (2d Cir. 1999).

Here, Plaintiff has not identified any person as personally involved or responsible for the decisions related to his conditions of confinement or his requests for protective custody. Indeed, the Complaint is devoid of any facts suggesting that any individual, at any facility, acted with "deliberate indifference" towards Plaintiff's safety.[11] There are no facts alleged regarding any request for protective custody at Plaintiff's current facility, Sing Sing. In order to establish that he is entitled to injunctive relief, Plaintiff must first plead that his constitutional rights were violated such that "an injunction is necessary to 'correct' the violation." *McLaughlin v. United States*, No. 512-CV-375, 2014 WL 1047298, at *3 (M.D. Fla. Mar. 17, 2014). As presently plead, the Complaint does not sufficiently allege any constitutional violation. Based upon the foregoing, the Eighth Amendment claims are subject to dismissal without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Plaintiff is advised that any amended complaint submitted in response to this Decision and Order must identify, by name, the individuals alleged to have been personally involved in the acts of misconduct or wrongdoing complained of and must set forth a short and plain statement of the facts Plaintiff relies on in support of his claim that his constitutional rights

---

[11] The Court notes that while the exhibits annexed to the Complaint contain references to and signatures of individuals at Attica C.F., Clinton C.F., and Elmira C.F. who were involved in decisions related to Plaintiff's request for involuntary protective custody, Plaintiff did not name these individuals as defendants herein or otherwise refer to the individuals in the Complaint. *See* Dkt. No. 1-1 at 3, 5, 6.

11

were violated.

### C. State Law Claims

Plaintiff has alleged negligence, parallel to his federal claim for deliberate indifference. Compl. at 2. However, in light of the dismissal of Plaintiff's federal claims for deliberate indifference, and given the early stage of the case, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim at this juncture. *See* 28 U.S.C. § 1367(c)(3); *Valencia v. Sung M. Lee*, 316 F.3d 299, 306 (2d Cir. 2003). In the event Plaintiff amends the Complaint to state a valid claim for deliberate indifference, the Court will exercise jurisdiction over his state law claims.

## V. MOTION FOR TEMPORARY RESTRAINING ORDER

Preliminary injunctive relief "'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)). However, when the moving party seeks a "mandatory preliminary injunction that alters the status quo by commanding a positive act," the burden is "even higher." *Cacchillo*

12

*v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)).  Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."  *Citigroup Global Mkts.*, 598 F.3d at 35 n.4 (internal quotation marks omitted).

"'A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'"  *Bisnews AFE (Thailand) Ltd. v. Aspen Research Group Ltd.*, 437 Fed. App'x 57, 58 (2d Cir. 2011) (summary order) (quoting *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)).  Generally an alleged violation of a constitutional right creates a presumption of irreparable harm.  *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996).  However, speculative, remote or future injury is not the province of injunctive relief.  *Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983).  Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that "absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *Bisnews AFE (Thailand)*, 437 Fed. App'x at 58 (quoting *Faiveley*, 559 F.3d at 118); *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238, at *2 (S.D.N.Y. June 27, 1994) ("It is well settled that an allegation of the mere possibility of irreparable harm is insufficient to justify the drastic remedy of preliminary injunction. . . . A party who seeks the extraordinary remedy of a preliminary injunction must show the alleged irreparable harm to be imminent, not remote or speculative, and the alleged injury to

13

constitute one that is incapable of being fully remedied by monetary damages." (citations omitted)). A finding of irreparable harm cannot be based solely on past conduct. *Haden v. Hellinger*, No. 9:14-CV-0318, 2016 WL 589703 at *1 (N.D.N.Y. Feb. 11, 2016).

When seeking prospective injunctive relief, the plaintiff must show a likelihood of either future harm or continuing harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010). "Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." *Nicosia v. Amazon.com, Inc* , 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles*, 461 U.S. at 111, 103 S.Ct. 1660). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Id.*

Plaintiff respectfully request that the Court direct "defendants, their successors in office, agents and employees and all other persons acting in concert and participation with them," to place Plaintiff in permanent protective custody. Dkt. No. 8. Plaintiff claims that he is the victim of past attacks and implies that he will be subjected to future assaults.[12] Upon review, the Court finds that Plaintiff has failed to meet the heavy burden for a mandatory injunction. Plaintiff's belief that he will likely suffer attacks at Sing Sing is based upon the fact that he claims to have been attacked in the past at different facilities. Past allegations of assaults in different facilities, standing alone, are insufficient to support a finding of irreparable harm. *See Toliver v. Fischer*, No. 9:12-CV-00077 (MAD/ATB), 2015 WL 403133,

---

[12] Plaintiff filed the motion on December 26, 2018, while he was incarcerated at Great Meadow C.F. Dkt. No. 8. At some point after filing the motion, Plaintiff was transferred to Sing Sing C.F.

14

at *9 (N.D.N.Y. Jan. 29, 2015) (finding claim that the plaintiff was in danger of future assaults due to the defendants' refusal to place him in protective custody as "entirely speculative and relate[d] to possible future injury, and therefore [ ] not sufficient to show irreparable harm.").

At this juncture, Plaintiff has failed to assert any viable cause of action and all allegations in the Complaint have been dismissed. Moreover, the Court has not been presented with any facts related to Plaintiff's current condition of confinement. To wit, Plaintiff does not indicate whether he is currently confined in protective custody or in general population. As presently constituted, the facts do not suggest that Plaintiff will suffer an injury that is neither remote nor speculative should the motion not be granted. As a result, Plaintiff's motion must be denied.

## VI. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's in forma pauperis application (Dkt. No. 5) is **GRANTED**;[13] and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's Inmate Authorization, and notify the official that this action has been filed and that Plaintiff is required to pay the Northern District of New York the statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of Plaintiff's Inmate

---

[13] Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

15

Authorization to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) claims for money damages pursuant to Section 1983 against Annucci in his official capacity; and (2) claims against the State of New York; it is further

**ORDERED** that the State of New York is **DISMISSED** as a defendant herein; and it is further

**ORDERED** that if Plaintiff wishes to proceed with this action, he must file an Amended Complaint as set forth above within **thirty (30) days** from the date of the filing of this Decision and Order; and it is further

**ORDERED** that if Plaintiff timely files an Amended Complaint, this matter be returned to the Court for further review; and it is further

**ORDERED** that if Plaintiff fails to timely file an Amended Complaint as directed above, the Clerk shall enter judgment indicating that this action is **DISMISSED** without prejudice without further order of this Court pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and for failure to comply with this Decision and Order. In that event, the Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that Plaintiff's motion for a temporary restraining order (Dkt. No. 8) is

**DENIED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff.

Dated: March 7, 2019

_Brenda K. Sannes_
Brenda K. Sannes
U.S. District Judge